FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2007 JUN 22 AM 8: 40

LORETTA G. WHYTE
CLERK



RECEIVED

JUN 20 2007

CHAMBERS OF
U.S. DISTRICT JUDGE
CARL J. BARBIER

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SUSAN AND DAN ROBIN | * | CIVIL ACTION NO. 06-5242 |
| | * | |
| Plaintiffs, | * | |
| versus | * | |
| | * | |
| FIDELITY NATIONAL PROPERTY AND | * | SECTION "J" |
| CASUALTY INSURANCE COMPANY | * | |
| | * | |
| | * | |
| Defendant. | * | |
| | * | MAG. 5 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PRETRIAL ORDER

NOW INTO COURT, through undersigned counsel, and in accordance with the Court's Scheduling Order, come jointly, Plaintiffs, Dan Robin and Susan Robin ("Plaintiffs"), and Defendant, Fidelity National Property and Casualty Insurance Company ("FNPAC"), who hereby respectfully submit this Pretrial Order, as follows:

1.

**Date of Pretrial Conference**:

The Pretrial Conference in this matter is currently set for June 21, 2007, at 3:30 p.m.

2.

**Appearance of Counsel**:     Counsel for the Parties are as follows:

Fee
Process
X  Dktd
CtRmDep
Doc. No.

For the Plaintiffs:    Keith Couture and Dan A. Robin, Jr.

KEITH COUTURE, TA #22759
1341 WEST Causeway Approach
P.O. Box 2381
Mandeville, LA 70470-2381
(985) 674-4428
(985) 674-4462 FAX

DAN A. ROBIN, JR #24628
800 N. Causeway Blvd.
Suite 100
Metairie, LA  7007
(504) 832-8567
(504) 832-1799 FAX

For the Defendant:    Gerald Nielsen, William T. Treas and Christopher J. Bell.

NIELSEN LAWFIRM, L.L.C.
GERALD J. NIELSEN, La. S.B. 17078
CHRISTOPHER J. BELL, La. S.B. 22724
WILLIAM T. TREAS, La. S.B.26537
3838 N. Causeway Boulevard, Suite 2850
Metairie, Louisiana 70002
Telephone: (504) 837-2500
Facsimile:   (504) 832-9165
Counsel for Defendant, Fidelity National Property and Casualty
Company

3.

**Relationship of Parties:**     The Plaintiffs, are insureds under a Standard Flood Insurance Policy ("SFIP") issued by the Defendant, FNPAC, as a "Write Your Own" ("WYO") Insurance Carrier under the National Flood Insurance Program ("NFIP").

4.

**Jurisdictional Questions:**    Plaintiffs were insured under a certain policy number 177700587914 of NFIP flood insurance issued by defendant, and delivered to Plaintiffs in the State of Louisiana, effective April 30, 2005 to April 30, 2006, insuring property and contents

located at 2405 Maple Street, St. Bernard, Louisiana, up to the limits of coverage provided therein, subject to a $500.00 deductible for structure While the parties agree that this Court has jurisdiction over this matter, Plaintiffs aver jurisdiction is present over their federal claims under 28 U.S.C. §§1331 (substantial federal question), 1332 (diversity), and over their state law claims under 28 U.S.C. §1367. Defendant contends that this Court's jurisdiction over this matter is exclusive under 42 U.S.C. §4072, which is the same statute which provides Plaintiffs their right of action to sue for federal benefits under the NFIP. See *Webb v. Aetna Ins. Co.,* 1997 WL 433500 (E.D. La. July 31, 1997), that being the most relevant case from this courthouse concerning the application of §4072 to FEMA's §4071(a)(1) fiscal agents.

5.

**List and Description of any Motions Pending:**

By Plaintiff:

None.

By Defendant:

Motion for Summary Judgment filed by the Defendant. This Motion asserts that Plaintiffs breached the Standard Flood Insurance Policy by not submitting a Proof of Loss and, as such, their case should be dismissed for failure to meet all the conditions precedent for filing suit. The Court has ruled on this issue. However, the Motion for Summary Judgment also seeks dismissal of Plaintiffs' state law claims for attorneys' fees, statutory penalties and interest. The Court has not ruled on this matter.

**Plaintiffs' Contemplated Motions:**

Plaintiffs reserve their right to file a Motion to Continue Trial. [1]

---

[1] Defendant objects to a continuance of the Trial of this matter. Any continuance should have been sought long before now.

**FNPAC's Contemplated Motions:**

Defendant intends to file motions in limine as to any documents Plaintiffs attempt to introduce which have not been previously produced to Defendant, and listed in the Plaintiffs' Witness and Exhibit List. Defendant further reserves its right to object to Defendant introducing at trial any documents which they have not specifically identified in this Pre-Trial Order.

6.

**Brief Summary of the Material Facts Claimed By:**

a.      **The Plaintiffs**:

Plaintiffs were insured under a certain policy number 177700587914 of NFIP flood insurance issued by defendant, and delivered to Plaintiffs in the State of Louisiana, effective April 30, 2005 to April 30, 2006, insuring property and contents located at 2405 Maple Street, St. Bernard, Louisiana, up to the limits of coverage provided therein, subject to a $500.00 deductible for structure and a $500.00 deductible for contents.

On or about August 29, 2005, Hurricane Katrina struck the City of St. Bernard, and by the following day thereafter, the storm produced, among other things, massive flooding which destroyed or damaged many homes, businesses, and other property.  Plaintiffs' property and contents were severely damaged by the flood waters, within the coverage of the subject policy no. 177700587914.

Plaintiffs made a claim and provided adequate proof of loss to defendant for the insured damage to plaintiffs' property covered by defendant's policy flood insurance.  Defendant sent an adjuster, Matt Landers, who after viewing the property denied the claim verbally.

Despite amicable demand, defendant has failed and/or refused to pay the full amounts due to plaintiffs under defendant's policy of insurance at issue. Defendant's claim that the property is partially over water is incorrect and does not negate the coverage afforded plaintiffs. Defendant has not denied the claim in writing and has not returned the premiums paid to it by plaintiffs.

As a result of the foregoing incidents, plaintiffs are entitled to and demand judgment against defendants for the full proceeds of the flood insurance policy no. 177700587914 at issue, in the amounts shown to be due, not to exceed the $500,000.00 plus interest thereon from date of indebtedness, or alternatively, from a date not later than date of judicial demand, together with statutory penalties, attorneys' fees and costs.

b.   **FNPAC:**

Plaintiffs held a Standard Flood Insurance Policy issued by FNPAC, which was effective for the period of April 30, 2005 through April 30, 2006 for property located at 2405 Maple Street, St. Bernard, Louisiana 70085-7743. Plaintiffs claim that the property sustained flood damage on August 29, 2005, as a result of Hurricane Katrina. Plaintiffs made a claim for food damage under the SFIP. FNPAC assigned an independent adjuster, Matthew Landis, from Colonial Claims Corporation, as a "courtesy only" per the terms of the SFIP Article VII (J).

On September 10, 2005, Mathew Landis contacted Dan Robin and scheduled an inspection of 2405 Maple Street. On September 30, 2005, Mathew Landis met Dan Robin at the property and conducted an inspection to assess the flood damage. On October 20, 2005, Mr. Landis completed a report detailing his initial perception of Plaintiffs' flood damages. In his report, Mr. Landis notes 21 inches of water on the exterior and 12 inches of water on the interior for a period of 24 hours, that the structure was completed in 2003 and that the claim would be

paid without payment as the structure is over the water with the exception of the front, which was built after the initial construction. Mathew Landis advised Dan Robin during a telephone conversation that Fidelity was denying coverage as the property was built entirely in, on or over water.

Dan Robin contacted a representative of FNPAC via telephone and expressed his dissatisfaction with FNPAC's assessment that the structure was built entirely in, on or over water and denial of his claim. FNPAC requested an opinion of FEMA as to the coverage for this property. On May 2, 2006, Rod Parker, Disaster Analyst for FEMA, issued a memorandum to Gerald Waytowich in which he reports that the adjuster properly closed the file without payment as the SFIP does not cover a building, and personal property in it, located entirely in, on, or over water or seaward of mean high tide if it was constructed or substantially improved after September 30, 1982. On May 2, 2006, Gerald B. Waytowich, Supervisor of Region 4 – NFI Bureau of FEMA, issued a memorandum to Jeff Moore in which he recommends that the claim was closed properly by the adjuster as the insureds' home is built entirely over water. On January 1, 2007, James E. Cavazos, General Adjuster for the NFIP, issued a memorandum to Gerald B. Waytowich in which he reports that based upon his inspection of the property, the building was located entirely over water. In his report he also notes the following: Apparently the land had been removed from a section of a canal that runs behind the risk; that a sheet piling retaining wall had been placed around the perimeter of the dug-out area; all 60 pilings are located inside the sheet piling bulkhead. As such, he concluded that the building was located over water and under the guidelines of the NFIP, cannot be a covered structure. On January 26, 2007, Gerald B. Waytowich, Claims Manager NFIP – Bureau and Statistical Agent, prepared a memorandum for

Jeff Moore attaching the report of James E. Cavazos and recommended that the insured be sent a denial letter based on the Policy.

FNPAC contends that the Plaintiffs' claims cannot be paid because (1) Plaintiffs failed to satisfy "all" of the conditions precedent to the making of a claim under the NFIP namely Article VII.J.3.4. and 7, VII.R.; (2) Plaintiffs' claims do not constitute covered losses under the Standard Flood Insurance Policy; and (3) even if Plaintiffs' claims were properly presented and were covered, Plaintiffs still failed to produce documentation to establish the actual amount in federal funds owed to them for that portion of their flood damages that they claim were related to Hurricane Katrina. More specifically as to these various points, Allstate submits the following:

1.  Plaintiffs' claim cannot be paid because it is not supported by a proof of loss that is timely, sworn, and complete in all respects. Plaintiffs' claim is barred, and Plaintiffs are divested of the right to sue for benefits under the National Flood Insurance Program. Plaintiffs have admitted in their depositions that they have never filed a Proof of Loss with FNPAC

2.  The Plaintiffs did not provide any documentation regarding costs to repair their property to FNPAC prior to filing suit. The Plaintiffs did not provide any documentation regarding costs to repair their property to FNPAC in their initial disclosures. The Plaintiffs did produce to FNPAC pursuant to Order of Judge Chasez compelling such production various estimates and expense receipts which did not pertain to the property at issue or pertained to items which are not covered under the policy. The estimate of Johnny Nunez which Plaintiffs produced to Defendant pertains to repairs needed by this property regardless of what caused the damage, and without regard to whether the damage was caused by wind or by flood or by failure to maintain the premises.

Furthermore, the documentation as to the property at issue included items which are specifically excluded from coverage. Despite the Defendants requests including formal discovery and Order compelling Plaintiffs' responses, not once have the Plaintiffs produced an estimate that documents an actual amount of federal funds that is owed to repair or replace damages that Plaintiffs' contend were caused by Hurricane Katrina, and which does not include damages that Dan Robin admits were caused by wind and/or wind driven rain. As such, under *Durkin v. State Farm Mutual Ins. Co.,* 3 F.Supp.2d 724 (E.D. La. 1997), *aff'd,* 141 F.3d 1163 (5th Cir. 1998), and due to Plaintiffs' failure to document their loss, their claim is barred. See also, *Mahood v. Omaha Prop. & Cas.,* 174 F.Supp.2d. 284 (E.D.Pa. 2001) (plaintiff bears the burden of proof to establish the amount of the claim); *Pacino v. Travelers, Kaufman v. State Farm* and *Taglialavore v. Allstate.*

Even further, Dan Robin admitted in his deposition that the structure has been repaired and that he has not provided the receipts or other documentation evidencing the amounts he paid for the repair. As such, Defendant is unable to determine the necessary amount Plaintiffs spent to repair or replace the damaged part of the dwelling for like use.

**Uncontested Facts:**

1.    Plaintiffs are the holders of a National Flood Insurance Program (NFIP) Standard Flood Insurance Policy (SFIP) issued by Defendants FNPAC that was in full force and effect at the time of Hurricane Katrina on or about August 28/29, 2005. The policy has building limits of $500,000.00, and no contents coverage. The address of the covered property was 2405 Maple Street, St. Bernard, Louisiana 70085-7743. The full text of the Plaintiffs' SFIP is as found at 44 C.F.R. Pt. 61, App. A(2)(2004).

2. Defendant issued the Plaintiffs' SFIP as a Write-Your Own (WYO) Program carrier, and pursuant to an "Agreement" with the federal government, the text of which is found at 44 C.F.R. Pt. 62, App. A. Defendant's role in the NFIP is to act as the "fiscal agent" and "fiduciary" of the United States. 42 U.S.C. §4071(a)(1) and 44 C.F.R. Pt. 62.23(f).

3. The Plaintiffs' NFIP/SFIP is the only policy of insurance put at issue in the Plaintiffs' Petition for Damages.

4. During Hurricane Katrina, Plaintiffs' property did suffer damage due to flood. Thereafter, Plaintiffs did file a claim for benefits under their SFIP with the Defendants FNPAC.

5. Defendant assigned an adjuster to the Plaintiffs' claim as "a matter of courtesy only," as per the terms of the Plaintiffs' SFIP, specifically SFIP Art. VII(J)(7).

6. During the adjustment process, Defendant determined that the Plaintiffs' property damaged as a result of Hurricane Katrina was property not covered under the SFIP and payment was denied.

7. Plaintiffs and Defendant disagree over the Defendant's assessment and denial of the Plaintiff's claim. Plaintiffs and Defendant disagree over whether federal benefits are payable upon the Plaintiffs' claim.

8. Plaintiffs' lawsuit seeks benefits under the Plaintiffs' SFIP, for property which is specifically excluded from coverage or otherwise not covered under the terms of the Plaintiffs' SFIP.

9. Plaintiffs did not file a Proof of Loss in support of the monies now being sought in this lawsuit.

10. Plaintiff's lawsuit was filed in breach of SFIP Article VII(J)(4) and VII (R).

11. At the time the incidents that gave rise to this suit arose, the Plaintiffs' property was insured under a SFIP issued by FNPAC bearing policy #17 7700587914 01.

12. The insurance policy at issue in this case is a National Flood Insurance Program Standard Flood Insurance Policy, the terms of which may be found at 44 C.F.R. Pt. 61, App. A(2).

13. FNPAC is a Write-Your-Own Program issuer of such policies, pursuant to 44 C.F.R. Pt. 62.23, *et seq.*

14. On the date of loss at issue in this case, a general condition of flooding did exist at the insured property.

15. The SFIP at issue in this litigation provides policy limits of $500,000.00 for building coverage per occurrence; $00.00 for contents coverage per occurrence; and has a $500.00 deductible per occurrence.

16. Mathew Landis, an independent adjuster with Colonial Claims Corporation, made contact with Dan Robin concerning the August 29, 2005 loss on or about September 10, 2005.

17. Mr. Landis inspected the Plaintiffs' property on or about September 30, 2005.

18. Mr. Landis sent FNPAC a NFIP Preliminary Report on or about October 20, 2005.

19. Mr. Landis sent FNPAC a NFIP Final Report on or about October 20, 2005.

20. Mr. Landis sent FNPAC a report of his assessment of the claim on or about October 20, 2005.

21. Mr. Landis concluded that the structure was built over water except for a portion to the front of the risk that houses laundry and ice machines which was added after the initial construction of the structure.

22. On November 15, 2005, FNPAC sent a letter to Dan Robin advising that there was no flood damage to the covered property as a result of this flood event and that he should contact FNPAC at the provided toll free number should he have any questions.

23. Rod Parker issued a Memorandum of May 2, 2006 in which he concludes that the flood loss claim was properly closed as the insured risk was built entirely over water.

24. On May 2, 2006, Gerald Waytowich issued Memorandum to Jeff Moore advising that the insured's claim was properly closed by the adjuster as the insured's home is built entirely over water.

25. On January 1, 2007, James E. Cavazos issued letter to Gerald Waytowich in which he concluded that the entire building is located over water with the exception of the front elevated walkway which has about one foot located over land.

26. On January 26, 2007, Gerald B. Waytowich issued a Memorandum to Jeff Moore recommending that a denial of claim letter be sent based upon policy as the building is located entirely over water.

27. Plaintiffs are only making a claim for building damages. No claim is being made under the contents coverage of the policy.

28. Plaintiffs did not submit a Proof of Loss to FNPAC.

29. Plaintiffs have not submitted receipts documenting the amount paid to Johnny Nunez or any other contractor to repair the property.

8.

## A Single Listing of the Contested Issues of Fact:

1. FEMA waived the requirement of filing a Proof of Loss.

2. FEMA waived the formal requirements of filing a Proof of Loss and Plaintiffs' letter satisfied the requirements set forth in the Waiver.

3. Plaintiffs filed a Formal Proof of Loss.

4. Strict compliance with proof of loss is not required.

5. Plaintiffs request and Fidelity has not yet obtained or had rejected a waiver of the proof of loss requirement.

6. This lawsuit was filed in furtherance of and not in breach of the SFIP.

7. Whether the Plaintiffs are seeking compensation for contents coverage as claimed in their Complaint but for which they did not purchase coverage?

8. What damage "evidenced by physical changes to the insureds' property" occurred during the flood loss event at issue in this matter?

9.     What if any repairs were made to the property after the flood loss event at issue in this matter?

10.    What is the actual cost paid by the insured for the repair to the property?

11.    Have the Plaintiffs submitted sufficient documentation to support a flood loss claim as per the terms of the SFIP at issue in this matter?

12.    Are any of the damages for which the Plaintiffs are claiming coverage under the SFIP excluded from coverage as per the terms of the SFIP at issue in this matter?

13.    Is the structure built entirely in, on or over water or seaward of mean high tide such that coverage is not afforded under the terms of Article IV.2. of the SFIP at issue in this matter?

14.    Are any of the damages for which the Plaintiffs are claiming coverage under the SFIP not covered under the terms of the flood insurance policy at issue in this matter?

15.    What portion of that which Plaintiffs have claimed under their flood policy, have Plaintiffs received or will receive from their claim under their private homeowners policy issued by Scottsdale?

16.    Are the Plaintiffs able to meet their burden of proof to establish the proper amount of their claim arising from the flood loss event at issue in this matter?

17.    To what extent are Plaintiffs' claims to be reduced due to depreciation.

18.    Plaintiffs did not file a Proof of Loss as required by Article VII(J) of the SFIP and therefore has not met the conditions precedent to filing a lawsuit against FNPAC.

**g.  Special Damages Itemized with Particularity**

## A. Single Listing of the Contested Issues of Law:

1.  Whether Defendants provided Plaintiffs with enough insurance coverage to adequately compensate Plaintiffs for their loss. [2]

2.  Whether Plaintiffs are entitled to receive penalties with regard to their loss.

3.  Does the SFIP cover "damage" to Plaintiffs' docks, bulkhead, porches and boat slips, or are these damages beyond the scope of coverage as per SFIP Art. IV.A.1.2.3.8.9.12 (identifying property not covered)?

4.  Given the definition of "direct physical loss by or from flood" contained in Article II of the SFIP, what must the Plaintiffs establish to show that a claimed item of damage is compensable under the SFIP? Under this definition, what constitutes covered damage?

5.  *Are Plaintiffs' claims for flood excluded by SFIP Art.V.D.3 and Art. V.D.8.?*

6.  What must an NFIP participant establish factually in order to recover full policy limits for a particular flood loss, given SFIP Article VII(V)?

7.  Have Plaintiffs met their burden of proof to establish the correct amount in federal *insurance benefits to which they are entitled under the applicable regulations* (a.k.a the SFIP) of the Program from which they seek to benefit?

8.  Are the Plaintiffs' state-law-based extra-contractual claims preempted and/or barred by federal constitutional, statutory and/or regulatory law, and/or by the Fifth Circuit's binding holding in *West v. Harris,* 573 F.2d 873 (5th Cir. 1978), *cert. denied,* 99 S.Ct. 1424 (1979).

9.  Are Plaintiffs' state-law-based extra-contractual claims barred by SFIP Art. IX, entitled "What Law Governs"?

10. Have the Plaintiffs submitted proper documentation required by Article VII.V.3, both as to their estimates of repair, and as to their actual costs of repair?

11. Are any of Plaintiffs' claims excluded by SFIP Art. V.A.?

---

[2] Defendant objects to Plaintiff's untimely raising the issue of alleged insufficient insurance coverage which has not been previously raised by Plaintiffs' in their Complaint. As such, this issue is outside the scope of the pleadings.

12. Is it a violation of the NFIP and the terms of Art. VII.D. of the SFIP for FNPAC to issue payment to the Plaintiffs as representative of FEMA have determined that coverage is not afforded for the property at issue as it located entirely in, on or over water or seaward of mean high tide and was constructed after September 30, 1982.

13. Is the structure built entirely in, on or over water or seaward of mean high tide such that coverage is not afforded under the terms of Article IV.2. of the SFIP at issue in this matter?

14. Did Plaintiffs fail to meet all the precedents required for filing suit against Defendant as they have not filed a Proof of Loss meeting the requirements of Article VII.J.7. of the SFIP?

15. What is the proper documentation required by Article VII.V.3.

## B. Single Listing of the Un-Contested Issues of Law:

1. All citizens are charged with knowledge of the provisions of federal insurance programs. *Federal Crop Ins. Corp. v. Merrill*, 68 S.Ct. 1 (1947).

2. In addition, those citizens who elect to become actual participants in federal programs do so under a further legal duty to "familiarize" themselves with the requirements of those programs. *Heckler v. Community Health Services of Crawford County, Inc.*, 104 S.Ct. 2218, 2225 (1984).

3. No claim may be paid upon a Standard Flood Insurance Policy unless the claimant has first established his or her prior compliance with "all" requirements of the policy. *Gowland, supra*; *Forman, supra*; *Mancini v. Redland Ins. Co.*, 248 F.3d 729 (8th Cir. 2001); *Sanz v. U.S. Security Ins. Co.*, 328 F.3d 1314 (11th Cir. 2003); and *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386 (9th Cir. 2000), *cert denied*, 531 U.S. 927, 121 S.Ct. 305 (2000).

4. Any payment that the Court might order upon Plaintiffs' SFIP would constitute a direct charge upon the national treasury. *Gowland, supra*.

5. A citizen making a claim against a Standard Flood Insurance Policy is prohibited by law from asserting that it is the adjuster's fault that certain conditions precedent were not met. 44 C.F.R. Pt. 61, App. A, Art. 9J(6). This is because the SFIP "candidly warns" claimants not to rely upon the adjusters. See *Wagner v. Director, FEMA*, 847 F. 2d 515, 520 (9th Cir. 1988).

6. Plaintiff has the burden to establish and prove the amount of the loss. *Mahood v. Omaha Prop. & Cas.*, 174 F.Supp.2d. 284 (E.D. Pa.2001).

10.

**List and Description of Exhibits Intended to be Introduced at Trial**:

A.     The Plaintiffs plan to introduce the following exhibits at trial:[3]

The Plaintiff may use and/or introduce the following exhibits into evidence at trial of this matter:

1)     Fidelity National Property and Casualty Insurance Policy Number 17 7700587914 01

2)     Gallodoro Insurance Company Invoice Number 805 Dated 3/24/2004

3)     Check number 1890 dated 4/7/2004 made payable to Gallodoro Insurance in the amount of $614.00 for payment of Invoice Number 805.

4)     Gallodoro Insurance Company Invoice Number 126612 Dated 7/8/04.

5)     Check number 8028 dated 7/8/2004 made payable to Gallodoro Insurance in the amount of $2,816.35 for payment of Invoice Number 126612.

6)     Gallodoro Insurance Company Invoice Number 806 Dated 3/24/04.

7)     Check number 1887 dated 4/7/04 made payable to Gallodoro Insurance in the amount of $5,190.00 for payment of Invoice Number 806.

8)     Gallodoro Insurance Company Invoice Number 126698 Dated 6/21/05.

9)     Check number 1065 dated 7/5/05 made payable to Gallodoro Insurance in the amount of $2,816.35 for payment of Invoice Number 126698.

---

[3] **OBJECTION.** This Pre Trial Order was due to be filed with the Court in Chambers at by 4:30 p.m. on Tuesday June 19, 2007. It was not until 3:00 p.m. on the said due date that Plaintiffs finally provided to the Defendant the list of exhibits that is set forth below. Defendants objects to these exhibits because (1) they were not attached the Plaintiffs' Proof of Loss (there was no Proof of Loss submitted) (2) they were not exchanged with Rule 26 Disclosures (3) they were not produced in response to discovery; (4) they do not relate to the property at issue, or if they do, they do not relate to a covered loss to the piece of property at issue in this lawsuit (5) they were not listed in Plaintiff's Witness & Exhibit lists and finally (6), Plaintiffs have failed to provide the defense a marked copy of each said exhibit so that the Defendant can avoid guessing what is being referenced in this last minute submission in this Pre Trial Order. Defendant further objects on grounds of relevance and grounds of Plaintiffs' failure to cooperate by providing this documentation prior to commencing this federally funded lawsuit.

10) Whims & Wishes Interiors Invoice Number 13019 dated 7/1/2006 in the amount of $2,823.84.

11) Whims & Wishes Interiors Invoice Number 13018 dated 7/1/2006 in the amount of $2,159.75.

12) Whims & Wishes Interiors Invoice Number 13185 dated 8/7/2006 in the amount of $2,752.82.

13) Whims & Wishes Interiors Invoice Number 13020 dated 7/1/2006 in the amount of $3,652.76.

14) Whims & Wishes Interiors Invoice Number 13019 dated 7/1/2006 in the amount of $2,823.84

15) Whims & Wishes Interiors Receipt for Invoice Number 13020 dated 7/1/06.

16) Whims & Wishes Interiors Receipt for Invoice Number 13185 dated 8/7/06.

17) Whims & Wishes Interiors Receipt for Invoice Number 13018A dated 8/15/06.

18) Whims & Wishes Interiors Receipt for Invoice Number 13019 dated 8/28/06.

19) Whims & Wishes Interiors Receipt for Invoice Number 13018B dated 8/29/06.

20) Whims & Wishes Interiors Credit Card Receipt in the amount of $4,983.59 dated 8/31/06.

21) Counter check made payable to Chris Dicket in the amount of $8,000.00 for boat and tractor dated 11/30/05.

22) Check number 1045 made payable to Best Buy in the amount of $3,246.58 dated 2/1/06.

23) Check number 1116 made payable to Victor Lopez for carpet installation in the amount of $3,000.00 dated 2/3/06.

24) Check number 1046 made payable to Vulcan for shells in the amount of $950.00 dated 1/10/06.

25) Letter dated 3/26/06 from Tower Engineering, Inc to St. Bernard Parish Government.

26) Check number 1166 made payable to Michael Dominique for electrical repairs in the amount of $18,900.00.

27) Check number 1068 made payable to Morgan Electric for electrical repairs in the amount of $5,872.51 dated 3/9/06.

28) Check number 1150 made payable to Sears for Freezer purchase in the amount of $498.98 dated 6/2/06.

29) Sears Charge Plus account statement dated 5/17/06.

30) Check number 1144 made payable to Sears for CoffeMaker Purchase and KM TM Promotional Sale in the amount of $604.92 dated 4/26/06.

31) Sears Charge Plus account statement dated 4/14/06.

32) Check number 1150 made payable to Sears for Freezer in the amount of $498.98 dated 6/2/06.

33) Sears Charge Plus account statement dated 12/17/05.

34) Check number 1114 made payable to Sears for Vacuum, Drill, and Toaster in the amount of $650.00.

35) Sears Charge Plus account statement dated 1/16/06.

36) Check number 1114 made payable to Sears in the amount of $350.00.

37) Vulcan Construction Materials Invoice Number 114684 in the amount of $966.55.

38) Vulcan Construction Materials Invoice Number 109766 in the amount of $950.02.

39) Check number 1135 in the amount of $2,585.76 made payable to Home Depot.

40) Home Depot Account Summary dated 2/28/06.

41) Home Depot Account Summary dated 1/30/06.

42) Lift Masters, Inc invoice number 11449 dated 3/15/06 in the amount of $884.07.

43) Check number 9011 dated 7/13/06 in the amount of $2,391.35 made payable to Gallodoro Insurance Company.

44) Check number 9010 dated 7/13/06 in the amount of $5,437.40 made payable to Gallodoro Insurance Company.

45) Check number 1070 made payable to Billy Rapp in the amount of $2,300.00.

46) Check number 1144 dated 4/26/2006 made payable to Sears in the amount of $604.92.

47) Sears Charge Plus Account Statement dated 4/14/06.

48) Check number 8633 dated 10/31/05 in the amount of $7,300.00 made payable to Johnny Nunez for demolition costs.

49) Receipt from Mike & Bobbie's Furniture Sales dated 4/29/06 in the amount of $1,204.35.

50) Home Depot Account Summary dated 3/30/06.

51) Home Depot Account Summary dated 2/16/06.

52) Home Depot Account Summary dated 2/17/06.

53) Home Depot Account Summary dated 2/23/06.

54) Home Depot Account Summary dated 1/9/06.

55) Home Depot Account Summary dated 1/19/06.

56) Home Depot Account Summary dated 1/25/06.

57) Home Depot Account Summary dated 3/28/06.

58) Register from Whitney National Bank for Dan and Susan Robin Dated 12/01/05 through 12/19/06.

59) Check number 1118 dated 2/4/06 made payable to Michael Deago in the amount of $855.80.

60) Check number 1134 dated 2/15/06 made payable to BFM Corporation in the amount of $1,800.00.

61) Check number 1014 dated 12/22/05 made payable to Cash in the amount of $2,000.00 for fence.

62) Check number 1015 dated 12/22/05 in the amount of $3,177.25 for invoice number 11038.

63) Check number 1016 dated 12/22/05 made payable to Halpins in the amount of $3,500.00.

64) Check number 1025 dated 1/5/06 made payable to Best Buy in the amount of $1,307.97.

65) Check number 1026 dated 1/6/06 made payable to Plant Tech in the amount of $2,581.68.

66) Check number 1027 dated 1/4/06 made payable to Ed Seay in the amount of $330.00.

67) Check number 1036 dated 12/26/05 made payable to Lowe's in the amount of $870.91.

68) Check number 1042 dated 1/23/06 made payable to Home Depot in the amount of $339.21.

69) Check number 1062 dated 1/7/06 made payable to Past Restored in the amount of $1,520.33.

70) Check number 1138 dated 2/23/06 made payable to Capital Bedding in the amount of $150.00.

71) Check number 1142 dated 2/26/06 made payable to Sears in the amount of $3,450.60.

72) Check number 1178 dated 3/14/06 made payable to Deborah Johnson in the amount of $3,500.00.

73) Counter check dated 12/1/05 made payable to Deborah Johnson design in the amount of $7,746.19.

74) Counter check dated 11/30/05 made payable to Chris Dicket in the amount of $8,000.00.

75) Check number 8633 in the amount of $7,300.00 dated 10/31/05 made payable to Johnny Nunez for demolition costs.

76) Title Associates, Inc correspondence to Dan A. Robin dated 4/9/2007 enclosing Act of Collateral Mortgage dated 3/11/2002 and Act of Correction of Collateral Mortgage dated 6/16/05 changing description of condo project in concurrence with the Act of Exchange.

77) Act of Collateral Mortgage dated 3/11/2002.

78) Act of Correction of Collateral Mortgage dated 6/16/05 changing description of condo project in concurrence with the Act of Exchange.

79) Statement of Loss dated 11/8/2005.

80) Photographs attached to Statement of Loss.

81)     Photographs attached to depositions.

82)     Any exhibit listed by Defendants.

B.     The Defendants plan to introduce the following exhibits at trial:

1.     Flood Declarations Page, marked as PC 0001 of the policy claim file.

2.     Letter from Matthew Landis of Colonial Claims Corporation dated October 20, 2005, marked as PC 0004 of the policy claim file.

3.     National Flood Insurance Program Final Report signed and dated October 20, 2005, marked as PC 0005 to the policy claim file.

4.     National Flood Insurance Program Preliminary Report dated October 20, 2005, marked as PC 0006 to the policy claim file.

5.     *Photographs marked as PC 0016 through PC 0024 of the policy claim file.* These photographs were taken by Colonial Claims adjuster Matthew Landis and attached to report dated October 20, 2005.

8.     Memorandum of Gerald Waytowich, Claims Manager, NFIP, dated January 26, 2007 transmitting report of James E. Cavazos and marked as PC0052 of the policy claim file.

9.     Memorandum of James E. Cavazos dated January 1, 2007 marked as PC0053-57 of the policy claim file, for the purposes of determine if the building was *completely over water or not.* Photographs attached.

10.    Memorandum of Gerald B. Waytowich, NFIP Supervisor, dated May 2, 2006 marked as PC0058-59 of the policy claim file transmitting report of Rod Parker, Disaster Analysts. The fax transmittal attached thereto is dated May 3, 2006.

11.    Memorandum Report of Rod Parker dated May 2, 2006 marked as PC0060 of the policy claim file.

12.    Standard Flood Non-Binding Quote from FNPAC dated March 23, 2004, marked as UW 0001 of the Underwriting file.

13.    National Flood Insurance Program General Property Form for Standard Flood Insurance Policy, 2005 Edition.

14.    Photographs taken by Susan Robin attached to plaintiffs' discovery responses. Also marked as Exhibit 18 to Dan Robin, Sr.'s deposition dated April 26, 2007.

15. Any exhibits listed by Plaintiffs.

16. *Depositions as needed for impeachment only.*

11.

**List of all Deposition Testimony to be Offered into Evidence**:

    A. *By Plaintiff:*

Plaintiffs do not intend at this time to offer any deposition into evidence,

except for impeachment purposes.

    B. *By Defendant:*

The defendant will not be calling any witness by deposition. Depositions will only be used, if necessary, for impeachment or to refresh recollection.

12.

**List and Brief Description of any Charts, Graphs, Models, Schematic Diagrams, and Similar Objects to be Used in Opening Statements or Closing Arguments**:

    a. Plaintiffs:

Plaintiffs may use enlargements and visual aides of insurance records,

exhibits, and/or depositions.

    b. Defendant:

May use enlarged photographs of the property at issue in this matter including photographs taken by Susan Robin, Mathew Landis and representatives of FEMA.

13.

**A.**     **List of Witnesses for Plaintiffs**

    A. Plaintiffs will call the following witnesses:

        a)     Susan Robin– Plaintiff – Fact

        b)     Dan Robin- Plaintiff- Fact

c)   Any of Defendant's listed witnesses

Plaintiff may call the following witnesses:

a)   Joseph Gallodoro

b)   A member of the staff of Gallodoro Insurance Agency.

c)   Any of Defendant's listed witnesses

d)   A member of the underwriting team.

e)   Any and all witnesses that may become available through

discovery and will be identified as they become available.

f)   Plaintiff reserves their right to supplement and amend this

Witness list as discovery is ongoing.[4]

The above excludes witnesses to be used solely for rebuttal or impeachment purposes.

## B.   List of Witnesses for Defendant

1.   Deborah Price, Claims Manager
Fidelity National Property and Casualty Insurance Company
2201 Farnam Street
Omaha, Nebraska 68131

Ms. Price will provide testimony regarding the adjustment of Plaintiffs' claims, general information about the operation of the National Flood Insurance Program and the adjustment of such claims, and FNPAC's reasons for why Plaintiffs' claims are perceived by FNPAC as not payable.

2.   James E. Cavazos, General Adjuster
NFIP Bureau and Statistical Agent
P.O. Box 766
Hattiesburg, Mississippi 39403

---

[4] Defendant objects to the listing of Joseph Gallodoro, a member of the staff of Gallodoro Insurance Agency and a member of the underwriting team. Joseph Gallodoro has been deposed in this matter and offers no relevant testimony as his opinion as to coverage is irrelevant as it is a matter of law for the Court to determine whether or not coverage is afforded under the SFIP. There is no testimony these persons could properly offer that is material to the issues before the Court.

Mr. Cavazos, a fact witness, may provide testimony of his inspection of the Plaintiffs' property, assessment that the structure is entirely in, on or over land, and the report he prepared.

3.      Gerald B. Waytowich, Claims Manager
           NFIP Bureau and Statistical Agent
           U.S. Department of Homeland Security
           P.O. Box 491
           Oldsmar, Florida 34677

Mr. Waytowich, a fact witness, may provide testimony of the adjustment of the Plaintiffs' property, the requirements for coverage under the NFIP and SFIP at issue as well as the Memoranda he issued in respects to the property at issue.

4.      Mathew Landis, Independent Adjuster
           Colonial Claims Corporation
           2200 Bayshore Blvd.
           Dunedin, FL 34698

Mr. Landis, a fact witness, may provide testimony of his inspection and assessment of the damage to the property at issue in this matter as well as his conversations with Dan Robin.

5.      Mr. Dan Robin and Mrs. Susan Robin

Mr. and Mrs. Robin, the insureds, may be called under cross to provide testimony regarding all aspects of this lawsuit.

6.      Any witness listed by the Plaintiffs.

b.      **Statement that Witness List Filed in Accordance with Court Orders**:

The parties did file Witness and Exhibit Lists in accordance with the Court's Rule 16 Scheduling Order. Defendant objects to Plaintiffs' use of any exhibit not specifically referenced in Plaintiffs' Exhibit list

14.

**Statement Indicating whether the Case is a Jury or Non-Jury Case**.

This matter is set for a two day bench trial before this Honorable Court.

15.

The issue of liability will not be tried separately from that of quantum.

16.

**Statement Describing any other Matters that Might
Expedite a Disposition of the Case**:

17.

The trial shall commence on July 19, 2007, at 8a.m. The parties estimate the trial will last 1-2 days.

18.

This Pretrial Order has been formulated after conference at which counsel for the respective parties have appeared via telephone. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

19.

Possibility of settlement of this case was considered.

_____
**HONORABLE CARL J. BARBIER**

Respectfully submitted,

_____
**KEITH COUTURE, TA #22759
DAN A. ROBIN, JR., #24628**
1341 WEST Causeway Approach
P.O. Box 2381
Mandeville, LA 70470-2381
(985) 674-4428/(985) 674-4462 FAX

GERALD J. NIELSEN
Louisiana Bar Roll No. 17078
WILLIAM T. TREAS
Louisiana Bar Roll No. 26537
CHRISTOPHER J. BELL
Louisiana Bar Roll No. 22734
**NIELSEN LAW FIRM, L.L.C.**
3838 N. Causeway Boulevard
Suite 2850
Metairie, Louisiana 70002
Telephone:    (504) 837-2500
Facsimile:    (504) 832-9165
Counsel for FNPAC National Property &
Casualty Insurance Company